Good morning. My name is John Miller. I represent the appellant, Monterey Properties. Right, you may proceed. Thank you. Do you want to reserve any time for rebuttal? I'll reserve a couple minutes for rebuttal. I don't think I'll take the full 15 either way. You might be surprised, but go ahead. I can take this last word, right? May it please the court. The issue here today, of course, is the denial of my client's right to jury trial. I'm a proud member of a mojo, and we get a little riled up when we don't get our jury trials. The easy part of this claim in my evaluation is the fact that there is indeed an occurrence during the traveler's policy, and that is the loss of the use of the pool by L.A. Fitness in April of 2016. I don't think it's strongly disputed, and even the district court didn't really dispute the fact this would indeed be a covered loss under the traveler's policy. Well, the problem that you have, do you agree, first, that MPAA knew of the deteriorating growth prior to purchasing insurance from travelers, and second, that L.A. Fitness's loss, abuse of the swimming pool resulted from the deterioration of the roof? And if you don't agree, would you please edify me as to why you don't agree? Well, there was indeed roof problems in dry walk at the time of purchase in 2013. There's no question about that. It's one of our undisputed facts. I believe it's number seven. Number seven also includes the undisputed fact that the membrane of the roof was intact, i.e. the roof was not in a leaking mode, and that the membrane was in good condition. In fact, this is undisputed fact number seven, all of those at ER 188. It's also an undisputed fact that as of 2014, this is undisputed fact number 16, and I'll just quote from the undisputed fact. In June 2014, L.A. Fitness responded to MPAA, that's Monterey Properties, Property Managers, inquiry, and stated they were unaware of any condensation or ventilation issues or any problems with the ceiling in the premise. These are the things that create tribal issues of fact, which I think were maybe ignored by the trial court. There is no question that there were ceiling issues ultimately. In fact, the ceiling essentially collapsed into the pool in April of 2016. The same ceiling, by the way, which in 2014, L.A. stated there was no problem with the ceiling. The problem arises, I think, when we try to connect dots between a roof that ultimately would need to be replaced and a specific illustration of property damages occurred three years later in 2016 in the middle of the second year of trial court's policy. Well, so if we assume that, let's just assume, and I just hypothetically, I'm assuming that we find that MPAA, we haven't talked about the case, so I'm just assuming hypothetically, let's assume that MPAA knew of the deteriorating roof and that the deterioration was the cause of L.A. Fitness's loss of use of the pool. What is your best argument, your best case supporting your assertion that the loss of the swimming pool was a distinct injury or damage? What's your best case? Our best case is Montrose. Montrose, I don't know if you're talking factually or if you're talking legally the best case, which was all but ignored by the district court in at least the first part of its opinion. Our best case is by far Montrose, California Supreme Court-specific pronouncement. If the court will indulge me, I can read three little snippets from Montrose starting at page 690. There was still a contingency in the fact that Montrose knew it was more probable than not that it would be sued, successful or otherwise. It is not enough to defeat the potential of coverage and consequently the need to defend. Book number two would be from page 691. In the context of third-party CGL coverage, loss in progress, known as loss contention, can seldom be successfully relied on by an insurer to defeat a duty to defend because the factual uncertainties needed to be resolved in order to establish the defense generally cannot be resolved on a motion for serving judgment. And the third short snippet. As long as there remains uncertainty about damage that may occur during the policy period and the imposition of liability upon the insured, no legal obligation to pay third-party claims has been established. There is a potentially insurable risk within the meaning of sections 22 and 250 for which coverage may be sought. That's the book of the insurance code. I think the mistake that the district court made, and I'm quoting from page 4 of the court's decision at ER 6, is when it said, accordingly, knowledge of a loss's cause amounts to knowledge of the loss to TLO. I believe that to be a misstatement of the holding in Montreux by the California Supreme Court and a misstatement of California law in general. And the logical extension of knowledge of a loss's cause amounts to knowledge of a loss would, I think, entirely upend California tort law and insurance coverage law. Well, there's another way you can potentially lose, so I want to cover all those just so that we have our questions answered. Let's assume that we determine that Travelers is not a stop from asserting the impaired property exclusion for purposes of this hypothetical. Assume that, and let's not waive this argument. Why isn't MPAA's claim covered by that exclusion? Certainly an impaired property exclusion can be ambiguous, but how is the exclusion in Travelers policy ambiguous? Well, it's a known loss exclusion, and Montreux makes very clear that there's a difference between a known loss and a known liability. And there was never a claim for loss of use of this pool until the April 2016 incident, at which time the pool was closed for good. And there was no claim for loss of use of this pool that predates 2016, which is a year and a half into the Travelers policy. The problem, I think, is the whole notion that the cause of the loss, if you know that there was a cause at some point in the past, you know about the loss. I just took my car into the dealer, and he said, oh, your brake pads are getting low. Next time you're here, we need to put in new brake pads. Well, if I'm turning into a family SUV, in the meantime, because my brakes go out, I have knowledge of the cause of the loss, brake problems, but I do not have the knowledge of the loss. I do not have knowledge of a known liability, and my auto coverage cannot weasel its way out of coverage by essentially, after the fact, underwriting of the claim and saying, well, if we had known that, we probably wouldn't have written your policy. Well, counsel, I understand your example, but I'm not sure that there is such a thing in automobile policy. Are there impaired property exclusions for liability in automobile policies? I haven't checked mine lately. We'll just talk about it. I don't think there would be because of the public policy of wanting to protect people. You know, even if you decide not to get your brakes fixed, try to protect other people like that. This is different, right? This is a different kind of insurance. There would be different policies, public policies as far as. . . So, I'm not sure that example really. I mean, I understand what you're trying to use the example for, but I'm not sure it actually, like, works very well because it's just a different kind of insurance that serves a different purpose. So, let's say a resident of an apartment complex falls off a walkway because the handrail breaks loose. No, but all of these are attempts. . . The examples they're using are insurances that cover somebody's liability to somebody else for injury or something like that. Whereas here, they're basically trying to get something fixed that was already broken. I mean, that's the whole point of the impaired property exclusion is to say, you know, you can't get insurance in something that's already. . . Your property's already impaired. You can't get insurance to fix it. So, I think it's a different. . . I see what you're. . . I understand your example, but I'm just not sure how it fits here in this regard. Well, I think. . . In the example you just gave, what you're doing is confusing first-party coverage with third-party coverage because third-party coverage is bodily injury and or property damage caused by negligence. When you talk about getting the roof fixed, which nobody's asked travelers to do, that would indeed be a first-party claim and I think would be excluded. Montrose speaks to third liability, which is why I've read one of those three snippets, literally, distinguishes what that means. Third-party liability is treated. . . In fact, the very exclusion they're relying on is an exclusion for bodily injury or property damage caused by a known loss. So, this is akin to those cases because it is a third-party claim. L.A. is making a claim against the owner of the building because it had a loss of use of the pool. It's not trying. . . There's nobody who said you need to fix the roof, travelers. That would be a first-party claim, and it is a whole different ballgame in terms of the depth of liability, and it's a disclosure. So, is your position on both the known loss and the impaired property that it seems to me that your position is basically even though you may know that something is a problem and could cause a problem until that problem is caused, those exclusions won't go into effect, only if the injury has already happened, if the thing has already happened. Is that the way you're reading the Montrose case? As long as the injury hasn't already happened, even though you may know that the condition of the property may or may not be likely to cause injury, then there's no exclusion. Correct. The Montrose case, they specifically knew that they had hazardous waste disposal activities. They received a letter from the EPA saying it's seeping different places, and still the court held that the consecutive insurers after those facts were known were responsible because there's a difference between known loss and known liability. The Montrose case, Montrose was, I was... It's kind of like, counsel, it's kind of an odd reading because, you know, it's called an impaired, I'm thinking about the impaired property exclusion right now, but it's called impaired property exclusion. And so, in that instance, you know, it hasn't, presumably the injury hasn't happened already. That's the reason why. It's just that the property's impaired, and so there could be an injury from having an impaired property. And so, you're basically saying, well, the loss has to have already happened. And that's the way you're reading these. If the loss hasn't happened, then the impaired property exclusion doesn't kick in until, unless the loss has already happened before they go into, before they enter into an insurance contract. If that apartment resident falls off the stairway because the handrail breaks loose and the insurance company finds out the handrail was rattling before they issued the policy, they don't back out of coverage because they say, well, knowledgeable loss is caused. You might understand that with the known loss, but why even have the, it seems like you're reading the impaired property exclusion to be like, to essentially be the same as a known loss, an already existing loss. Why have a separate provision for that? Well, I, I'll have to ask the insurance provider. I think, I'm guessing their answer is because they do two different things. Well, I don't think that they do. I don't think there's any case of. So, you're saying an easier position than the impaired property exclusion is just redundant with a known loss exclusion? I think, yeah, I think essentially it is, yes. Judge, I just wanted to make sure, do you have any questions? No, no, you've covered everything. All right, you have like a minute for rebuttal. Would you like to save that? I will save it. I have 53 seconds, actually. We'll reserve that. Okay. So, you're surprised, right? Yes. The, okay. So, we'll go to the appellant. Please state your name and appearance. Yes, Aaron Agnes for Appellee Travelers. I think the best way to go forward right now is to kind of follow the same track of questions that were brought up by Judge Callahan, and you asked about was the roof problem known, and whether or not it's clear the roof problem was known. I don't think there's any dispute the roof problem was known. It's in the joint statement of facts that these problems were known as of 2013. Recommendations were made to replace the roof for a total of $26,000, that the recommendations were that it should be done by 2014, and that in 2014, around that June time period, and I can cite just parts of the record if the court needs it, there was discussions about who should pay for the roof. The roof had to be fixed. LA Fitness and Monterey Property both agreed the roof had to be fixed. But a dispute became who should pay for it, who's responsible. And Monterey Property's argument was LA Fitness should pay for it because of the condensation from the roof. So as far as whether or not the roof needed to be replaced, that all is in the record, clearly happening before Children's Policy incepted. Well, on the MPA, your argument that the district, MPA argues that the district court misinterpreted CHU versus Canadian indemnity as covering an exclusion under the known loss exclusion. What's your response to that? The trial court, Judge Burns, did not get that wrong, Your Honor. In CHU versus Canadian, there were six known defects from faulty construction and five unknown defects from faulty construction, which were completely unrelated. In CHU, the California Public Court cites the different defects and explains them. On page 100, it describes the known defects, such as problems with the laundry facilities and the heating and air conditioning system. And then on page 100 later on, it goes on to describe the defects that were not known at the time, like the beetle infestations and the decaying stucco. And basically what the appellate court said was the trial court in that case got it wrong because it described defects as just faulty construction. So everything fell under the umbrella of faulty construction. And the appellate court said, no, you've got to look at what the defects are. In this case, we have six known and five unknown. And so those five unknown defects, which were unrelated to the six, are different. In this case, we have one defect. We have one deteriorated roof. The deteriorated roof was a problem from the beginning and continued to be a problem to the point that LA Fitness made a decision to close its pool. The pool wasn't damaged. There was no damage to the pool. And so the decision to close the pool was clearly related to deteriorated roof. In fact, Monterey Property even said so in its motion to stay. The second 2017 action, Monterey Property said under no uncertain terms, this action should not proceed because it's over the same deteriorated roof and will be resolved by the first 2014 action. And so as far as true, Judge Burns got it right, as he did with CAUTI, which is really on point as well because in CAUTI there were – similar to the damages that we held were not covered in the known loss explanation in CAUTI. So what's your – you're going to respond to that now? Yeah, how CAUTI does apply. Yes, and I believe Judge Burns got CAUTI's explanation correct as well. In CAUTI, Your Honor, there was known cracks in the manufactured stone and masonry caps. That's a tongue twister, but I said it slowly for that reason. What was unknown was whether or not those cracks led to the damage to the wooden components behind it. And the Ninth Circuit in that case explained that because there was no evidentiary record that the wooden damage flows from and resulted from the masonry cracks, there was a trialable issue for purposes of summary judgment. So there was a question about whether or not the damage to the wood, which was unknown pre-policy, was in fact a continuation of the damage caused by the masonry cracks. And as Judge Burns explained, in this case there's no such question. There's no issue. The evidentiary record is clear that the pool was closed by LA Fitness's decision because of the deteriorated roof above it. And, in fact, the only reason it wasn't repaired was because of moderate property, and LA Fitness were involved in litigation and then an appeal where moderate property would not replace the roof. And so LA Fitness took proactive steps. And so Coddy is right on with Trowler's position in this case because in Coddy, the holdup for the Ninth Circuit on summary judgment was whether or not the wooden damage flowed from and related to the masonry cracks. In this case, clearly closing the pool due to the deteriorated roof emanated from the deteriorated roof that was well known and known to need to be replaced back in 2014 and 13. Counsel, can I ask you about the Montrose case? You heard it, and it's in the briefing. The opposing counsel really relies heavily on that case. It's basically, you know, you can have a sort of damocles like hanging over, and everybody knows it's hanging over. But until it's actually fallen and injured somebody, it doesn't count, and the no-loss exclusion doesn't work to your benefit. That seems a little bit odd, but that's how they're reading the Montrose case. And A, why is that a wrong reading of the Montrose case, and what's your best case from California that says that that's not the rule, that basically even though you know that it's even very likely that a loss will happen because of certain conditions, until that loss happens, it's not excluded. That's their position. Thank you, Judge Van Dyke. And I would just point out to start that Judge Burns did address Montrose. There was a comment made that Judge Burns ignored Montrose, but he does address it in his district court ruling. And so I just want to bring that up as far as whether Montrose is right or wrong. And citing to it, Montrose does not apply. In this case, the way MPAA is trying to make it apply, Montrose is generally found in construction defect cases or asbestos cases or pollution cases. In fact, Montrose, as I recall, was involving contamination, and something that takes place over the years. It's eventually discovered, and all the carriers along the way, from when the process started until the end, are generally found to owe a potential for coverage until they figure out when the damage happened. Here we don't have that. Here we have a deteriorated roof that is a known loss, known damage, a known dispute over fixing that. And Connie and Shu are right on point discussing how the damage, or the damage. So we're referring to the pool being damaged, but the pool wasn't damaged. The pool was decided to be closed as a safety measure. This is not a case we heard about. Well, what if the handrail fell and there was an injury? We're not talking about a situation today where a part of the roof fell and injured someone on the head. I see your point on that, but they are saying, aren't they, that there's the damage that LA Fitness experienced from having to close the pool, which is different than just who's going to fix this roof, right? That's their injury that they're saying is the actual loss that happened after the insurance contract was entered into. Right. Monterey Property is saying that there was an economic loss associated with the deteriorated roof because they had to close the pool. It's not the roof itself. It's not the roof. It's the failure to fix the roof, but there's the economic loss from lost membership. Well, what if the roof fell on someone swimming in the pool? Well, then you'd have to talk about it. How would Montress come into play there? I still wouldn't really be Montress, but there are cases about how that's a bodily injury now, right? So now you're looking at a bodily injury claim, and you're looking at when did the bodily injury claim occur and how it would occur during the policy period. We'd have to look over the policy closely, but that would be a different issue than what we have today because you'd be dealing more with the different types of damages, distinct damages, to some extent, different than what we're talking about today. What we're talking about today is, well, everything's falling from a deteriorated roof. The question would be, is there a separate bodily injury? And we'd have to go through the policy and figure that out. But the CAUTI issue. Well, let's say then if it wasn't a bodily injury, if it just fell on the pool and wrecked the pool. I mean, that would be if it wrecked the pool. I'm not really sure how it would happen, but let's just say it damaged the side of the pool. We'd have to go through it. I mean, I think that it's still flowing from the deteriorated roof. That's not replaced. And so then you're also looking at, in our case, you know, I think one of the things we brought up was the impaired property exclusion. There was another argument raised earlier about whether there's an occurrence with respect to the loss of use of the pool. And if you lose on the, let's say, hypothetically, we don't agree with you on the known loss. I'm assuming what you're saying is you have other ways to win. Correct. There were four different ways raised in our papers, Your Honor. And one of them is the impaired property. What's your best one? Well, I would say it's a combination of two. It's the occurrence argument and the impaired property exclusion. And the occurrence argument is if they're trying to say that this is wholly unrelated distinct property damage because of the decision to close the pool. That's not an occurrence because it's a decision made to close the pool. There's no accident that happened. LA Fitness made a decision to close the pool because Monterey Property wouldn't fix it. And they were litigating over, you know, trying to get Monterey Property to fix it. And so there was no windstorm that further damaged the roof or, you know, or particles falling from the roof and landing on someone or something of that nature. We just have the same deteriorated roof that's been sitting around for years and, in fact, remains sitting there until 2018, even though it was known to be a problem in 2013. So the three strongest would be the known loss and occurrence. And if somehow there was not a known loss and there was an occurrence, you know, which we obviously dispute, it'd be the impaired property exclusion. The last one we cited is the owned property exclusion because this really is all about the roof. It gets back to the roof. This is all about the deteriorated roof. As Monterey Property's own motion escape paper say, this is all about the roof. Please stay the action. It's kind of like that song, It's All About the Base. You're saying it's all about the roof. I'm not going to dance harder on a Monday. Let me ask. The cases that we cited are on point with the relevant policy language. Mike Cotty actually is citing to our policy language. We're here about today with respect to known loss. But this all emanates from the exact same issue. Judge Burns went through that. In his ruling, explained why he found this to be a continuation of the property damage because, as Judge Burns, I don't have the quote in front of me, but to paraphrase, you know, he was basically saying that LA Fitness's argument in the second suit was still tied to the deteriorated roof. That was an issue way back when, right? That the loss of use of the pool argument is because you failed to fix the deteriorated roof. So we had to close it. It's not because something else happened. There's no random nuance that suddenly intervened that was distinct. I mean, this was, you have a horrible roof. You need to fix it. And they said, no, you should fix it. You're the tenant. It's your fault. And they turned out to lose that argument. And then eventually LA Fitness said, we haven't fixed it yet, so we've got to close the pool. But it's all the roof. This is all about roof damage. There's no damage to a person, to other property, or anything else. And so, you know, for that reason, Your Honors, I think there's multiple reasons why there's no coverage here. And, you know, Judge Burns only had to get to one to get there, and we think he's correct. But there are others that also support the summary. So when you keep saying it's all about the roof, are you saying you think it would be a different case if a piece of the roof had fell down and, you know, to get away from the bodily injury thing had somehow broken the pool or something like that? Yeah. It would be a, I'd have to look more closely with that eye in mind. It would definitely be different than this case. I don't know that the outcome would be different, but I think it's a little bit of a different factual scenario. Because now we are looking at some other damage. The argument, you know, on the known loss is basically that just because something's damaged, you haven't had the loss yet. You know, that's their argument. They haven't necessarily had the loss yet. And so when you have the loss, and the loss here is the closure of the pool, that that happened afterwards. And the fact that you know that something's damaged doesn't necessarily foreclose you from being able to recover when you actually get the loss, even if the loss was foreseeable. That's their argument on the known loss. It doesn't seem like that's too crazy of an argument for the same reason that if a piece of the pool had fallen in and hit somebody on the head, that that might be different. That might be different because the loss at that point would be the bodily injury to somebody, right? And so you didn't know that a piece of the roof was going to fall in. You know the roof was deteriorated, but you didn't know the loss. The loss hadn't happened yet. Yeah, Judge Vanda, I think that's a, as we're talking it out and thinking about the case law that we cited, you know, I think to that issue, right, Cotty involved known cracks to the masonry, and there was a question of what caused the damage to the wood sheathing behind it. So if we're talking known damage to the deteriorated roof and flowing from that as the damage to the pool that eventually falls, I actually do think Cotty would apply as long as that was the record, it was established, right? So we're talking about what did the evidentiary records show. But presumably in that hypothetical, Ellie Fitness is feeling and saying, hey, you didn't fix the roof, and now my pool is damaged too because it fell and damaged it. And so in that scenario, you actually do have the same scenario within the Ninth Circuit addressed in Cotty, which is if the evidentiary record in that hypothetical would show that the pool damage flowed from that same deteriorated roof, in fact, I think it would apply just like Cotty instructed. So, you know, I knew I said I needed to look at it some more, and I think talking about it with your honors helped me like think about it, but I think that's exactly what Cotty said. Can we go back? Thank you. Can we go back to Montrose for a minute? I think you will concede that if you just pluck some language out of Montrose, it probably doesn't sound so good for you. Your argument, as I understand it, is that Montrose is just distinguishable on the facts, that this was a pollution-type situation, which occurred over many years, many different insurers involved, and there was a factual issue, as the court found, as to when and what and who. Am I right? Is that true? That's exactly right, Judge Ezra. And you see it come up in those contamination, asbestos-type cases, as well as soil movement cases where you're not sure when along the process, you just know eventually there's movement. But, yes, that's exactly my point. Okay. I just want to be sure. All right. My clock's going up, so unless Your Honor has any more, I don't want to. And do either of our colleagues have additional questions? All right. Thank you. All right. We'll give you two minutes for rebuttal. Thank you, Your Honor. The two things that I want to hit on right now are, number one, this notion of condi being distinguishable. In this particular case, there was some known damage to drywall. We have a situation where the roof is intact. The membrane is intact. But when they did a drilling, they found some drywalk in the plywood sheets. It's the drywall below that, which, by the way, in Undisputed Facts 16, everybody admits L.A. Fitness had no knowledge of. As of 2014, it's that drywall which collapsed into the pool. Secondly, I'd like to comment on is the closure. But it's the closure, counsel, isn't it? The closure of the pool, that's the problem. Well, that was occasioned by the debris, yes. The closure of the pool is the claim. But that was all as a result of the problem with the roof. The drywall wasn't. You can't separate the drywall from the roof, can you? Is there a factual dispute about that? A leak of pipes or something, is that what you're suggesting? I'm suggesting there were no leaks of pipes, and there was certainly no evidence of any kind of leakage through the roof causing this problem. Well, then where would it have come from? It comes from the pool. It's moisture coming up from the overheated pool. They distinguished the wood damage from the reasonary crack right next to the wood and said those are two different types. I found it. Is there anything in the record to support that, any evidence of it? The discussion is of the core done and found, the drywall. There's no mention of damage to the overheated pool. That was the whole argument. That's literally in the complaints. I understand that, but I'm having a hard time putting your two sticks together here. Well, I think it's in part of the Undisputed Facts 7, I know it's 16th, about ventilation issues and the argument that it was caused by the pool, the effluence of steam from the pool. I also, if I can briefly speak to, I think it's interesting the questions that the panel asked about damage to an individual. I think clearly if part of that ceiling fell on an individual. I already gave you extra time, so you're over on extra time. Unless the court has additional questions or if Judge Van Dyke would like him to explore that, you're over. All right. So the court does not appear to have additional questions. So that will conclude argument in this matter. I'll give you 30 seconds to wrap up. Okay. I just wanted to point out that the bodily injury aspect of their policy with the known loss is the actual same section for the property damage and loss of use. It's all one section. So there is no difference between somebody getting hit on the head by something from the ceiling or any other property damage cause. It's the exact same provision in the policy. You can see that provision at, well, since I'm running out of time, I'll. And finally, on the impaired damage, the impaired property exclusion is a red herring. That exclusion applies to your work, meaning if you as a contractor built the ceiling at the pool and you say that the ceiling is now damaged. Okay, I really need to wrap up. You're testing my patience. I gave you an inch. You're going the mile now. Okay. I'll submit your argument. Thank you. Thank you. Thank you both for your argument today. This matter will stand submitted.
judges: CALLAHAN, VANDYKE, Ezra